UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                      CASE NO.

**JERRY MICHAEL HOLLANDER**                  **04-14550**
**SHEILA STORY HOLLANDER**

                                                            SECTION A
DEBTORS                                                     CHAPTER 7


**ROBERT SIGILLITO**                              ADVERSARY NO.
**RHONDA SIGILLITO**

PLAINTIFF                                              **04-1193**

VERSUS

**JERRY MICHAEL HOLLANDER**
**SHEILA STORY HOLLANDER**

DEFENDANTS


**MEMORANDUM OPINION**

## I.  INTRODUCTION

On September 28, 2014, the United States District Court for the Eastern District of Louisiana

("District Court") remanded the above-captioned case to the undersigned to award attorneys' fees.[1]

The District Court's remand is based upon its finding that plaintiffs, Robert Sigillito and Rhonda

Sigillito ("Sigillitos"), proved their fraud claim against defendants, Jerry Michael Hollander, Jr., and

Sheila Story Hollander ("Hollanders").[2]  Under Louisiana Civil Code Article 1958, a party against

whom a fraud has been perpetrated is entitled to an award of attorneys' fees.

---

[1] *In re Hollander*, 2014 WL 4926325, *1 (E.D. La. Sept. 29, 2014).

[2] *Id*. at *2.

## II.  STANDARDS FOR AN AWARD OF ATTORNEYS' FEES

Because the Sigillitos' entitlement to attorneys' fees arises from Louisiana Civil Code Article

1958, Louisiana law determines the amount to which the Sigillitos are entitled.  Under Louisiana

law, courts are empowered to inquire into the reasonableness of attorney fees as part of their inherent

authority to regulate the practice of law.  *Smith v. State, Department of Transportation &*

*Development*, 899 So.2d 516, 527 (La. 2005).  In their inquiry as to the reasonableness of attorneys'

fees, state courts generally utilize Rule 1.5 of the Rules of Professional Conduct.  *Chevron U.S.A.,*

*Inc. v. Aker Maritime, Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) ("In Louisiana, the amount of an

attorneys'-fee award is governed by Rule 1.5 of the Rules of Professional Conduct.") (citation

omitted).  Rule 1.5 provides, in pertinent part:

> a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee
> or an unreasonable amount for expenses. The factors to be considered in determining
> the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and
> the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment
> will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> and

(8) whether the fee is fixed or contingent.[3]

Determination of a reasonable attorney's fee is a two-step process. First, a court looks at the number of hours expended and multiplies that number by an appropriate hourly rate, thereby establishing a base amount. *See Bruce v. Ford Motor Co.*, 130 So.3d 427, 433 (La. App. 3rd Cir. 2013) (Attorney's fee award based upon reasonable hourly rate times reasonable amount of time expended in representation); *Harp v. Autrey*, 121 So.3d 1260, 1274 (La. App. 2nd Cir.), *writ denied*, 126 So.3d 1286 (La. 2013) (Attorney's fee based upon an hourly rate of $130.00 and 83.7 hours expended). The factors under Rule 1.5 generally advise a court on the applicable rate and hours to utilize. *State, Dept. of Transp. and Development v. Monteleone*, 106 So.3d 153, 172 (La. App. 5th Cir. 2012), *writ denied*, 108 So.3d, 1179 (La. 2013) (Rule 1.5 factors considered in determining that base rate was appropriate); *Smith*, 899 So.2d 516 (Rule 1.5 factors considered in conjunction with a determination that claimed number of hours and hourly rate were reasonable). Thereafter, a court may decrease or increase the base amount by taking into account any extenuating circumstances as long as those circumstances are incorporated into the factors set forth under Rule 1.5. *Jackson Parish Bank v. Durbin*, 535 So.2d 1074, 1078-79 (La. App. 2nd Cir. 1988) (Based on Rule 1.5, the court concluded that attorney's fee awarded was excessive); *Linoski v. Fleetwood Homes of Texas, #12*, 873 So.2d 886, 888-89 (La. App. 2nd Cir. 2004) (Court considered Rule 1.5 factors in increasing attorney's fee). Generally, a trial court's assessment of attorneys' fees will not be disturbed absent

---

[3] The above factors are virtually identical to the federal 'lodestar' method as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)." In *Johnson*, the Fifth Circuit enumerated the factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Only factors (10) and (12) are not included in Rule 1.5.

manifest error or a clear abuse of the court's discretion. *Capital City Press v. Board of Sup'rs of Louisiana State University*, 822 So.2d 728, 731-32 (La. App. 1st Cir. 2002) (absent clear abuse of discretion, appellate court refused to disturb amount of attorneys' fees awarded by trial court); *Baton Rouge Home Health Care Corp. v. Lemoine*, 640 So.2d 797, 800 (La. App. 3rd Cir.), *writ denied*, 643 So.2d 162 (La. 1994) (determination as to amount of reasonable attorneys' fees is at the discretion of the trial court and will not be disturbed on appeal absent manifest error).

## III. BASE ANALYSIS

### A. Bankruptcy/Adversary Proceeding

On June 15, 2004, the Hollanders filed a Chapter 7 voluntary petition for bankruptcy.[4]  On September 10, 2004, the Sigillitos filed an adversary proceeding seeking to have their claim in redhibition and fraud excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[5]  The Sigillitos hired the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz ("Baker Donelson") in connection with their bankruptcy adversary proceeding.

### 1. Baker Donelson Rates

To determine a reasonable hourly rate, the Court must consider the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience and reputation. *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002).  Another consideration in the instant case is the extensive time period over which the services were performed.

---

[4]  Bankruptcy Case 04-14550, P-1.

[5]  Adversary Proceeding (Adv. Pro.) 04-1193, P-1.  As discussed *infra* at 18, 22, and 31, the Sigillitos, in March 2003, filed a state court action against the Hollanders based on redhibitory defects in the home they purchased from the Hollanders.

4

A review of state court opinions indicates that the average hourly rate for state court practitioners in commercial litigation matters is generally lower than the hourly rates set in federal courts. *See Mayfield v. Reed*, 981 So.2d 235 (La. App. 2nd Cir. 2008) (In redhibition case, counsel with over twenty-five (25) years experience awarded a rate of $180.00 per hour); *Linoski,* 873 So.2d 886 (In redhibition case, counsel with over twenty (20) years experience awarded a rate of $150.00 per hour). In this case, the hourly rates charged by the two (2) state court practitioners representing the Sigillitos, Grace Gremillion ("Gremillion") and Clint Pierson ("Pierson"), are $125.00 and $150.00 per hour, respectively. Of note is the fact that Pierson has more experience than any of the attorneys at Baker Donelson. In contrast, Baker Donelson's rates for all counsel, including rates charged by associates with only one (1) year's experience, are higher than the Pierson, Gremillion, or the general state court rates. However, since Baker Donelson performed all of its work in the United States Bankruptcy Court, where the fees allowed are generally higher than in state court, the Court will compare Baker Donelson's fees to that of other practitioners of like experience and talent practicing commercial litigation before this Court.[6]

### a. Hank Arnold ("Arnold")

Arnold's representation of the Sigillitos spanned a period in excess of ten (10) years, from July 1, 2004, to the present time. Becoming a member of the bar in 1988,[7] Arnold, as an attorney with approximately sixteen (16) years of experience, charged an hourly rate of $250.00 for the

---

[6] This Court routinely reviews and approves rates of compensation for all levels of experience. For example, in 2015 alone, over 300 applications approving rates of employment for counsel were individually considered by the Court. The following discussion cites a few, but by no means all, of the cases in which the rates of counsel were reviewed and set. This opinion, however, is based on the Court's collective experience gained over almost ten (10) years on the bench.

[7] Adv. Pro. 04-1193, P-211 at 2.

period from July 1, 2004, to May 23, 2005.[8]  Between 2006 to 2008, this Court allowed a maximum hourly rate of $275.00 for bankruptcy counsel with fifteen (15) to sixteen (16) years of experience.[9] Therefore, Arnold's rate of $250.00 per hour is reasonable.[10]

During the period from June 14, 2005, to January 30, 2007, Arnold's hourly rate increased to $265.00,[11] and from February 1, 2007, to December 4, 2007, increased again to $275.00 per hour.[12] Based on its own precedent, the Court finds these step increases reasonable.[13]

From March 10, 2008, to January 26, 2009, Arnold charged $290.00 per hour.[14]  At this point, Arnold had twenty (20) years of experience.  In 2008, this Court observed in *Beechgrove* that the highest rate allowed for experienced bankruptcy counsel with approximately thirty (30) years of experience was $350.00 per hour.[15]  Based upon this benchmark, the Court finds an hourly fee of $280.00 to be appropriate for the time period at issue.

From March 2, 2009, to January 26, 2010, Arnold's hourly rate increased to $295.00.[16]  At

---

[8]  Exh. 5 at 128-30.

[9]  *See In re Beechgrove Redevelopment, LLC*, 07-12057 at 9 (Bankr. E.D. La. Dec. 22, 2008) (unpublished) (copy attached).

[10]  Contrary to the Hollanders' suggestion, this Court did not limit a fee rate in *In re Jones*, 2007 WL 2480494, *3 (Bankr. E.D. La. Aug. 29, 2007), *rev'd in part on other grounds*, 391 B.R. 577 (E.D. La. Jul. 1, 2008). While the Court approved the rate of $175.00-$200.00 per hour charged by debtor's counsel, the rates approved in *Beechgrove* were higher.

[11]  Exh. 5 at 130-32.

[12]  Exh. 5 at 132.

[13]  *Beechgrove, supra*.

[14]  Exh. 5 at 132-33; Exh. 6 at 137-40.

[15]  *Beechgrove*, 07-12057 at 9.

[16]  Exh. 6 at 140; Exh. 7 at 142; Exh. 8 at 145.

this point, Arnold had been practicing law for approximately twenty-one (21) years.  For the time period commencing on or about June 28, 2010, this Court approved a rate of $300.00 per hour for counsel with twenty-three (23) years experience.[17]  Based upon this, the Court finds Arnold's rate of $295.00 to be reasonable.

From February 17, 2010, to October 18, 2010, Arnold, who had twenty-two (22) years of experience, charged $310.00 per hour.[18]  The Court finds this rate to be in excess of the Court's maximum rate for counsel with similar experience.[19]  Based upon the maximum $300.00 rate awarded counsel with 23 years of experience for work performed during approximately the same time period, the Court finds $300.00 to be a reasonable billing rate.

From March 30, 2011 to January 20, 2012, Arnold charged $315.00 per hour.[20]  At this point, Arnold had approximately twenty-three (23) years of experience.  Again, based upon this Court's previous approval of a rate of $300.00 per hour for counsel with twenty-three (23) years of experience billing over roughly the same time period, the Court finds a $15.00 reduction, from $315.00 per hour to $300.00 per hour, appropriate as the base rate charged in the community.

---

[17]  *See In re Disaster Master Restoration/Cleaning, LLC,* No. 10-10758 (Bankr. E.D. La.).  Application to Employ entered 8/5/11 (pleading 85); Order Granting Application entered 8/17/11 (pleading 86).  Years counsel David Messina practiced law obtained from the website of Gordon, Arata, McCollam, Duplantis, & Eagan, LLC.

[18]  Exh. 8 at 145; Exh. 9 at 147.

[19]  *See supra* at n.17.

[20]  Exh. 9 at 147; Exh. 10 at 149.

From September 27, 2013, to November 21, 2013, Arnold's billing rate was $330.00 per hour and he had twenty-five (25) years of experience.[21]  Again, based on precedent,[22] a rate of $300.00 is in keeping with the community's standard rate.

From January 17, 2014, to December 30. 2014, Arnold's hourly rate jumped to $390.00;[23] then during January 2015, inexplicably decreased to $380.00 per hour.[24]  The above rates are high for both Arnold's experience level and this Court's experience.   At this point, Arnold had approximately twenty-six (26) years of experience. For the period from October 2014, to December 2014, bankruptcy counsel with between thirty (30) and thirty-seven (37) years of experience received compensation in the maximum amount of $375.00 per hour.[25]  The Court finds a rate of $325.00 per hour to be within the community standard for attorneys with Arnold's experience.[26]

### b. Jan Hayden ("Hayden")

Hayden, during the period from January 20, 2012, and March 2, 2012, billed the Sigillitos for  3.5 hours of work at a rate of $425.00 per hour,[27] and on January 28, 2015, billed half an hour

---

[21]  Exh. 10 at 149; Exh. 11 at 150.

[22]   *See supra* at n. 17.  *See also In re 10-8 Tactical Gear & Supply, LLC*, No. 13-10326 (Bankr. E.D. La.) (for work performed in 2013, a rate of $295.00 per hour for counsel with 24 years experience approved).

[23]  Exh. 11 at 150; Exh. 12 at 151; Exh. 13 at 152.

[24]  Exh. 20 at 279.

[25]  *See In re Louisiana Interests, Inc.*, No. 14-12772 (Bankr. E.D. La.), Application for Compensation entered 1/20/15 (pleading 162); Order Granting Application in Part entered 2/13/15 (pleading 187).  Years counsel Stewart Peck practiced law obtained from the website of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard.

[26]  Baker Donelson's time entries submitted to the Court end with time billed in January 2015.  While Baker Donelson represents that attorneys' fees for February 2015 through March 6, 2015, amount to $6,729.00 (pleading 199, pp. 21 and 24), time entries to support this request have not been supplied.

[27]  Exh. 10 at 149.

of work at a rate of $425.00 per hour.[28]   In 2012, Hayden had thirty-two (32) years of legal experience and in 2015, thirty-five (35) years of experience.[29]   On January 26, 2010, this Court approved an hourly rate of $375.00 for Hayden.[30]   While the work at issue was performed over a later time period, the Court is mindful of the fact that bankruptcy counsel with thirty-seven (37) years experience who performed work in 2014 received a maximum compensation rate of $375.00 per hour.   Considering this factor, the Court finds $375.00 to be the standard billing rate for Hayden's time.

### c. Alexander McIntyre ("McIntyre")

McIntyre performed work for the Sigillitos between March 30, 2009, and September 7, 2010, at a rate of $305.00 per hour.[31]   During that time, McIntyre had approximately twenty-five (25) years of experience.[32]   Based upon this Court's finding that $295.00 per hour was the appropriate maximum rate over the same approximate time period for Arnold, with twenty-one (21) to twenty-two (22) years of experience, the Court finds McIntyre's rate of $305.00 per hour to be reasonable.

In 2014, specifically October 28, 2014, to November 12, 2014, McIntyre's hourly rate increased to $310.00.[33]   Considering McIntyre's experience, that rate is reasonable.

---

[28]   Exh. 20 at 279.

[29]   Hayden became a member of the bar in 1979.  Adv. Pro. 04-1193, P-211 at 2.

[30]   *See In re MBS - Lodge at Sonterra, Ltd.*, No. 09-13812 (Bankr. E.D. La.).  Application for Compensation entered 11/17/09 (pleading 4); Order Granting Application entered 1/26/10 (pleading 56).

[31]   Exh. 7 at 143-44; Exh. 8 at 145; Exh. 9 at 148.

[32]   McIntyre became a member of the bar in 1985.  Adv. Pro. 04-1193, P-211 at 2.

[33]   Exh. 12 at 151; Exh. 13 at 152.

9

### d. Margaret Silverstein ("Silverstein")

Silverstein, like Arnold, became a member of the bar in 1988.[34] Her billing was limited to May 2006, and her hourly billing rate was $290.00.[35] At this point, Silverstein had approximately eighteen (18) years of experience and is entitled to the same 2006 billing rate as Arnold, $265.00 per hour.

### e. Jennifer McNamara ("McNamara")

McNamara's billing is limited to the period from December 8, 2004, to December 16, 2004.[36] At this point, McNamara had nine (9) years of experience[37] and her billing rate was $175.00.[38] In its December 2008 opinion in *Beechgrove*, the Court recognized that it had approved hourly fees of $200.00 to $215.00 for counsel with eleven (11) years experience.[39] Using these rates as a basis of comparison, the Court finds McNamara's rate of $175.00 per hour to be reasonable.

### f. Seth Levine ("Levine")

Levine became a member of the bar in 2001.[40] From July 1, 2004, to March 17, 2005, Levine's hourly rate was set at $160.00.[41] At that time, Levine had approximately three (3) years

---

[34] Adv. Pro. 04-1193, P-211 at 2.

[35] Exh. 5 at 136.

[36] Exh. 5 at 135-36.

[37] McNamara became a member of the bar in 1995.  Adv. Pro. 04-1193, P-211 at 2.

[38] Exh. 5 at 135-36.

[39] *Beechgrove*, 07-12057 at 8.

[40] Adv. Pro. 04-1193, P-211 at 2.

[41] Exh. 5 at 133-34.

of legal experience.  In July 2004, this Court approved a rate of $150.00 per hour for counsel who became a member of the bar in 2000.[42]  Based upon same, the Court finds an hourly rate of $150.00 to be reasonable.

From July 1, 2005, to July 26, 2006, Levine's rate was $180.00 per hour.[43]  Levine, at that time, had approximately four (4) years of experience.  Again, based upon the hourly fee of $150.00 awarded in July 2004, the Court finds Levine's billing rate of $180.00 unreasonable.  A rate of $165.00 is appropriate as the base rate charged in the community.

From March 10, 2008, to January 14, 2009, Levine charged $215.00 per hour.[44]  At this point, Levine had seven (7) years experience.  For the time period commencing on June 5, 2009, this Court approved a rate of $225.00 per hour for counsel with nine (9) years of experience.[45]  Based upon same, the Court finds $190.00 per hour to be a reasonable rate for Levine as he had less experience and his billing was for an earlier period of time.

---

[42]  *See In re Fair Grounds Corporation*, No. 03-16222 (Bankr. E.D. La.).  Application for Compensation entered 06/23/04 (pleading 654); Order Granting Application entered 7/20/04 (pleading 718).  The year that counsel Theodore Owers, III became a member of the bar was obtained from the website of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux.

[43]  Exh. 5 at 134.

[44]  Exh. 5 at 134-35; Exh. 6 at 141.

[45]  *See In re C&O Enterprises, LLC*, No. 09-11686 (Bankr. E.D. La.).  Application to Employ entered 06/05/09 (pleading 2); Order Granting Application entered 06/09/09 (pleading 8).  Years counsel Robin DeLeo practiced law obtained from "Lawyer Robin DeLeo - Mandeville, LA Attorney - Avvo.com."

### g. Brian Ballay ("Ballay")

Ballay performed his work for the Sigillitos in August 2008 at a rate of $205.00 per hour.[46] At that point, Ballay had three (3) years of legal experience, becoming a member of the bar in 2005.[47] Ballay's billing rate of $205.00 per hour is outside the community standard to those of like experience. For work commencing on March 15, 2010, this Court approved a rate of $195.00 per hour for counsel with six (6) years of experience.[48] Given that Ballay performed his work earlier and had three (3) years less experience, the Court finds the standard to be a lesser rate of $170.00 per hour.

### h. Sean Finan ("Finan")

Finan became a member of the bar in 2005.[49] Finan performed work for the Sigillitos on July 6, 2004, as a law clerk. Finan's law clerk hourly rate was $115.00,[50] well outside the community standard for a law clerk. For work performed in 2010 and 2011, this Court routinely approved rates of $90.00 per hour for law clerks employed by major law firms in the city.[51] Given that Finan's work was performed earlier, a rate of $70.00 per hour is in keeping with the community standard.

During his first year of practice, from May 2006 to June 2006, Finan worked on the

---

[46] Exh. 6 at 140.

[47] Adv. Pro. 04-1193, P-211 at 2.

[48] *See In re Ormond Country Club*, No. 10-10807 (Bankr. E.D. La.). Application to Employ entered 03/16/10 (pleading 9); Order Granting Application entered 04/28/10 (pleading 86). Year counsel Frederick Bunol became a member of the bar obtained from the website of the Derbes Law Firm.

[49] Adv. Pro. 04-1193, P-211 at 2.

[50] Exh. 5 at 133.

[51] *See In re FQRV, LLC*, No. 10-14074 (Bankr. E.D. La.). Application for Compensation entered 9/1/11 (pleading 143); Order Granting Application entered 11/1/11 (pleading 171).

Sigillito's case at an hourly billing rate of $165.00,[52] again in excess of the community standard. This Court approved an hourly rate of $125.00 per hour for work performed from April 4, 2005, through December 5, 2005, by counsel with two (2) years of legal experience.[53]  Finan had less experience and his work was performed only months later.  Therefore, the Court considers $115.00 to be a standard rate within the community at which Finan's time in 2006 should have been billed.

### i. Paul Colomb ("Colomb")

Colomb became a member of the bar in 2007.[54]  Colomb, at a rate of $170.00 per hour, performed work for the Sigillitos on April 22, 2008, during his first year of practice.[55]  Considering that Colomb's work was performed two (2) years after Finan's, an appropriate billing rate for Colomb as a first year associate is $125.00 per hour.

### j. Ben Janke ("Janke")

Janke's representation of the Sigillitos spanned a period of approximately seven (7) years, from October 14, 2008, to the present.  Janke became a member of the bar in 2008.[56]  Shortly thereafter, during the period of October 14, 2008, to January 26, 2009, Janke commenced working on the Sigillitos' case at a rate of $165.00 per hour.[57]  As with Colomb, Janke performed this work

---

[52]  Exh. 5 at 133.

[53]  *See In re Meal Solutions I, LLC*, 04-11367 (Bankr. E.D. La.).  Application for Compensation entered 2/15/06 (pleading 295); Order Granting Application entered 03/09/06 (pleading 297).  Year counsel Frederick Bunol became a member of the bar obtained from the website of the Derbes Law Firm.

[54]  Adv. Pro. 04-1193, P-211 at 2.

[55]  Exh. 5 at 133.

[56]  Adv. Pro. 04-1193, P-211 at 2.

[57]  Exh. 6 at 140-41.

during his first year of practice. Janke is entitled to the same billing rate as Colomb, $125.00 per hour.[58]

From March 10, 2009, to January 28, 2010, Janke's billing rate was $175.00 per hour.[59] At this point, Janke had one (1) to two (2) years of experience. As noted earlier, for work performed in March 2010 by counsel with four (4) more years experience, this Court approved a rate of $195.00 per hour.[60] Based upon same, the Court finds Janke's rate of $175.00 per hour to be outside the community standard. A rate of $130.00 is in keeping with community rates for an attorney with Janke's experience.

From February 1, 2010, to January 25, 2012, Janke's time was billed at a rate of $190.00 per hour.[61] During this time, Janke had approximately two (2) to three (3) years of experience. Again, a rate of $195.00 per hour was approved for counsel with four (4) more years experience. The bulk of Janke's work, however, was performed over a later time period. Factoring in the differences, the Court finds a rate of $165.00 to be the standard rate.

Inexplicably, Janke was billed at a rate of $215.00 per hour for work performed on February 16, 2012.[62] His rate, however, for the period from November 20, 2013, to December 30, 2013, was

---

[58] Colomb's rate has been adjusted upward due to the intervening time period.

[59] Exh. 6 at 141; Exh. 7 at 142-43; Exh. 8 at 145.

[60] *See In re Ormond Country Club*, No. 10-10807 (Bankr. E.D. La.). Application to Employ entered 03/16/10 (pleading 9); Order Granting Application entered 04/28/10 (pleading 86). Year counsel Frederick Bunol became a member of the bar obtained from the website of the Derbes Law Firm.

[61] Exh. 8 at 145; Exh. 9 at 147-48; Exh. 10 at 149.

[62] Exh. 10 at 149.

14

reduced to $200.00 per hour.[63]  At this point, Janke had approximately five (5) years of experience.
For work performed between February 19, 2013, through April 30, 2013, a billing rate of $225.00
per hour was approved for an attorney with nine (9) years of experience.[64]  Based on a comparison
of the two, the Court finds a rate of $185.00 per hour to be within the community standard.

For the period from January 17, 2014, to January 29, 2015, Janke's billing rate jumped to
$270.00 per hour,[65] a rate in excess of those appearing before this Court with like experience.  At
this point, Janke had been practicing law for approximately six (6) years.  As noted above, a rate of
$225.00 per hour for work performed in 2013 was approved by this Court for counsel with greater
experience.  Considering that the majority of Janke's work was performed a year later in 2014, a
direct comparison is not possible.  However, factoring in the different time periods and the different
levels of experience, the Court finds a rate of $185.00 per hour to be reasonable.

### k.  Matt Juneau ("Juneau")

Juneau became a member of the bar in 2010[66] and shortly thereafter, on September 3, 2010,
he performed work on the Sigillitos' case at a rate of $170 per hour.[67]  As a new associate, the Court
finds a billing rate of $135.00 per hour to be within the community standard.

---

[63]  Exh. 11 at 150.

[64]  *See In re 10-8 Tactical Gear & Supply, LLC*, No. 13-10326 (Bankr E.D. La.).  Application for
Compensation entered 11/26/13 (pleading 26); Order Granting Application entered 1/14/14 (pleading 30).  Year
counsel Frederick Bunol became a member of the bar obtained from the website of the Derbes Law Firm.

[65]  Exh. 11 at 150; Exh. 12 at 151; Exh. 13 at 152-53; Exh. 20 at 279.

[66]  Adv. Pro. 04-1193, P-211 at 2.

[67]  Exh. 9 at 148.

### l.  Lauren Elizabeth Courtney ("Courtney")

Courtney worked on the Sigillitos' file from May 20, 2009, to May 27, 2009.[68] Courtney was not a member of the bar but rather was working as a law clerk.  Courtney was billed at a rate of $140.00 per hour.  As noted earlier, for work performed in 2010 and 2011, this Court found the community standard rate per hour for a law clerk to be $90.00.[69]  The Court finds $90.00 per hour to be a reasonable billing rate for Courtney.

### m.  Aimee Berthelot ("Berthelot")

Berthelot, a paralegal, performed work on the Sigillitos' case on December 8, 2004.[70] Berthelot's hourly billing rate was $70.00.  For work performed December 20, 2004, to April 28, 2005, Judge Jerry Brown approved an hourly rate of $80.00 for a paralegal.[71]  As Berthelot performed her work earlier, the Court finds the charged rate of $70.00 per hour to be reasonable.

### n.  John Alberts ("Alberts")

Alberts, a paralegal, worked on the Sigillitos' case from May 19, 2009, to June 3, 2009, and from August 20, 2010, to August 26, 2010.[72]  For his 2009 work, Alberts was billed at $110.00 per hour.  For his 2010 work, Alberts was billed at $115.00 per hour.  Both rates are in excess of the community standard.  For work performed between November 1, 2010, and August 8, 2011, this

---

[68]  Exh. 7 at 142.

[69]  *See In re FQRV, LLC*, No. 10-14074 (Bankr. E.D. La.).  Application for Compensation entered 9/1/11 (pleading 143); Order Granting Application entered 11/1/11 (pleading 171).

[70]  Exh. 5 at 133.

[71]  *See In re Thomas*, No. 99-12285 (Bankr. E.D. La.).  Application for Compensation entered 5/5/05 (pleading 345); Order Granting Application entered 5/25/05 (pleading 353).

[72]  Exh. 7 at 142; Exh. 9 at 147.

Court approved $90.00 as a reasonable hourly rate for a paralegal working for a major law firm.[73]

The Court finds $90.00 per hour to be a reasonable rate of compensation for Alberts.

### o.  Cindi Voisin ("Voisin")

Voisin performed paralegal services for the Sigillitos on November 11, 2014, at a billing rate of $170.00 per hour.[74]  Again, this rate is significantly higher than the $90.00 paralegal rate set as a community standard rate for services performed from April 2014 through February 2015.[75] Therefore,  $90.00 per hour is the appropriate rate for Voisin.

### p.  Stephen Roques ("Roques")

Roques billed time at an hourly rate of $160.00 for paralegal services performed on January 29 and 30, 2015.[76]  Again, based upon the $90.00 rate set for paralegal services in April 2014 to February 2015, the Court finds an hourly rate of $90.00 to be proper.

### 2.  Baker Donelson Hours

Baker Donelson has submitted time entries reflecting the fees charged to the Sigillitos from July 1, 2004, to January 30, 2015.[77]  In addition to the rates charged by counsel, the Hollanders have lodged the following objections.

---

[73]  *See In re FQRV, LLC,* No. 10-14074 (Bankr. E.D. La.).  Application for Compensation entered 9/1/11 (pleading 143); Order Granting Application entered 11/1/11 (pleading 171).

[74]  Exh. 13 at 153.

[75]  *See In re Hill Rivers Services, LLC,* No. 12-10177 (Bankr. E.D. La.).  Application for Compensation entered 3/24/15 (pleading 159); Order Granting Application entered 4/15/15 (pleading 168).

[76]  Exh. 20 at 279.

[77]  *See* Exh. 5, Exh. 6, Exh. 7, Exh. 8, Exh. 9, Exh. 10, Exh. 11, Exh. 12, Exh. 13, and Exh. 20.

### a. Objection Based on Results Obtained

The Hollanders argue that the Sigillitos recovered $28,424.43 in damages, a nominal amount when compared to the amount of attorneys' fees requested. The Hollanders seek a reduction in fees "to an amount that is rationally proportional to the actual damages obtained, and suggest the fees awarded should not exceed twice the amount of the damages."[78]

In *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983), the United States Supreme Court provided that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." In adjusting a fee downward based upon the level of success, the Court recognized that there is no "precise rule or formula" that a court can employ, advising: "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37, 103 S.Ct. at 1941.

In this case, an assessment of the Sigillitos' level of success cannot be based solely on the amount of damages awarded. As the District Court observed, this case has had a "long and tortured history."[79] To properly evaluate the "results obtained," a brief review of the case's path is necessary.

In March 2003, the Sigillitos filed a state court action against the Hollanders alleging defects in a home they purchased from the Hollanders. The suit demanded damages, attorneys' fees, and either a reduction in the purchase price of $540,000.00, payment for repair expenses, or rescission

---

[78]  Adv. Pro. 04-1193, P-204 at 28 and 29.

[79]  *In re Hollander*, 2014 WL 4926325 at *1.

18

of the sale.[80]  On June 15, 2004, the Hollanders filed a Chapter 7 voluntary petition for bankruptcy.[81]

On September 10, 2004, the Sigillitos filed an adversary proceeding against the Hollanders, alleging

the nondischargeability of their state court claims.  The Hollanders' defense asserted that no defects

existed in the home, but if they did, they were dischargeable.  After waiting over four (4) years for

a state court to resolve the underlying complaint, this Court elected to hear the entire matter.

Following a three-day trial, this Court found the Hollanders liable in redhibition and ordered them

to pay repair costs in the amount of $28,424.43.[82]

The Sigillitos appealed the decision to the District Court which affirmed in part, vacated in

part, and remanded for further proceedings.  Specifically, the District Court upheld the damage

award but directed a determination of the Sigillitos' claim for fraud.  If successful, this would entitle

the Sigillitos an additional recovery in the form of attorney fees.[83]

On remand, this Court determined that the Hollanders were not liable for damages in fraud,[84]

and the District Court affirmed.[85]  The United States Fifth Circuit Court of Appeals ("Fifth Circuit"),

however, reversed the Court's judgment and remanded the matter for further proceedings based on

---

[80]   Adv. Pro. 04-1193, P-145 at 1.

[81]   Bankruptcy Case 04-14550, P-1.

[82]   *In re Hollander*, 2009 WL 111732, *7 (Bankr. E.D. La. Jan. 14, 2009).  The Court initially determined that the Sigillitos were entitled to repair costs in the amount of $26,541.63.  Upon reconsideration, the Court awarded an additional $1,863.00.  *In re Hollander*, 2009 WL 2872404 (Bankr. E.D. La. Mar. 27, 2009).

[83]   *In re Hollander*, 2009 WL 2707445, *5 (E.D. La. Aug. 25, 2009), La. C.C. art. 1958.

[84]   *In re Hollander*, 2010 WL 148286, *3 (Bankr. E.D. La. Jan. 12, 2010).

[85]   Adv. Pro. 04-1193, P-145 at 8.

a lower standard of proof.[86]

On remand, this Court again held that the Sigillitos failed to establish their claim for fraud.[87] Once again, the Sigillitos appealed.  On appeal, a new District Court Judge reversed this Court's decision, rendered a decision in favor of the Sigillitos, and remanded the matter for an award of attorney's fees.[88]

The Sigillitos were initially successful at trial when the Hollanders were cast in judgment based in redhibition and awarded damages in the amount of $28,424.43.  Through multiple appeals, the Sigillitos were ultimately successful when the District Court found the Hollanders liable in fraud and the Sigillitos entitled to an award for attorneys' fees.[89]  Given their success in this matter, no reduction of attorneys' fees based upon the results obtained is warranted.

### b.  Objection Regarding Recreation of Time

The Hollanders argue that Baker Donelson's time entries represent "after-the-fact reconstructions," and as such, cannot properly be used to support a fee application.[90]  The Court disagrees.

A similar argument was presented to the Court in *In re Porter*, 2014 WL 585962 (Bankr. E.D. La. Feb. 14, 2014).  In *Porter*, plaintiff argued that counsels' hours were not reasonable "as

---

[86]   The Fifth Circuit determined that the Court erroneously concluded that the Sigillitos had failed to prove fraud by clear and convincing evidence when the proper standard of review was whether they proved their fraud claim by a preponderance of evidence.  *In re Hollander*, 438 Fed. Appx. 274, 277-78 (5th Cir. 2011).

[87]   *In re Hollander*, 2011 WL 6819022, *4 (Bankr. E.D. La. Dec. 28, 2011).

[88]   *In re Hollander*, 2014 WL 4926325 at *4.

[89]   Any claims on appeal for additional damages were denied.  The primary purpose of the Sigillitos dogged pursuit of appeals through multiple courts was to obtain reimbursement of their attorneys' fees.

[90]   Adv. Pro. 04-1193, P-204 at 7.

they were recreated after the fact . . . ." *Id.* at *6. The Court rejected plaintiff's argument. A review

of all counsels' time entries appears appropriate given the tasks identified.[91] Further, the case cited

by the Hollanders in support of their position, *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99

F.3d 761, 772 (5th Cir. 1996), discounted plaintiffs' time entries based chiefly upon their lack of

detail. In contrast, the billing entries provided by Baker Donelson are sufficiently detailed.

### c. Objection Regarding Lack of Excluded Time/Billing Judgment

The Hollanders maintain that the submitted billing entries are deficient and do not establish

that the Sigillitos' counsel exercised billing judgment. Specifically, the Hollanders complain that

because the invoices do not reflect how much time was written off as unproductive, duplicative, or

excessive, the Sigillitos' attorneys have failed to establish they exercised billing judgment.[92] The

Hollanders' argument requires the Sigillitos' attorneys to provide documentation through

contemporaneous time or billing records of *both* the hours charged *and* the hours written off as

unproductive, excessive, or redundant.[93]

Generally, all time that is excessive, duplicative or inadequately detailed should be excluded

from a fee request. *Silver Dream, LLC v. 3MC, Inc.*, 2011 WL 5878142, *5 (E.D. La. Oct. 31,

2011), *report and recommendation adopted*, 2011 WL 5878140, *1 (E.D. La. Nov. 23, 2011) (citing

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). "The fee seeker's attorneys are 'charged with

the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with

proving they exercised billing judgment.'" *Id.* (quoting *Walker v. U.S. Dept. Of Housing and Urban*

---

[91] Exception is noted where hours have been specifically reduced. *See*, *e.g.*, *infra* at n.120. Janke's fee application time was reduced by 13.80 hours.

[92] Adv. Pro. 04-1193, P-204 at 8.

[93] Adv. Pro. 04-1193, P-204 at 11 (emphasis original).

*Development*, 99 F.3d 761, 770 (5th Cir. 1996)).

There is no requirement that counsel, in order to show that they exercised billing judgment, provide billing entries reflecting the time they did not charge to their clients.[94]  Both Arnold and Janke testified that they regularly under-recorded their time in an effort to keep costs down because the Sigillitos were paying the legal bills.  The Court finds, based upon the testimony of counsel, along with this Court's review of the detailed billing entries, that the Sigillitos' attorneys have satisfied the burden of proving they exercised billing judgment.

### d.  Objection Regarding Redacted Time

The Hollanders argue that redacted time entries should be excluded as a determination of their relevancy is not possible.  The Court agrees.[95]  A total of 7.80 hours must be subtracted from Baker Donelson's billable time.[96]

### e.  Objection Regarding Time Between When the Stay Was Lifted and When the Adversary Proceeding Was Set for Trial

The Sigillitos filed their state court proceeding against the Hollanders in March 2003.  In June 2004, the Hollanders filed a voluntary bankruptcy petition, thereby staying the state court

---

[94]  The Hollanders cite *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), for the proposition that the Sigillitos' attorneys were required to submit billing entries showing the amount of time for which they did not charge the Sigillitos.  A reading of *Kellstrom* provides no such requirement.  Instead, the Fifth Circuit Court stated that the fee applicant has the burden of documenting the reasonable number of hours expended, "'and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement.'"  *Id.*  (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941).

[95]  *See Monster Rentals, LLC v. Coonass Const. Of Acadiana, LLC*, 2015 WL 1447818, *6 (La. App. 3rd Cir. 2015) (court, in awarding attorneys' fees, did not consider redacted time entries).  Following trial, the Sigillitos' attorneys indicated that they would provide the Court with unredacted time entries for the Court's *in camera* review. Counsel, however, has failed to provide the Court with the pertinent entries.

[96]  Exh. 5 at 128, 129, 131, 132, 133 and 136.

proceeding.[97]    On September 10, 2004, the Sigillitos filed an adversary proceeding against the Hollanders.[98]  On February 4, 2005, the Sigillitos' Motion for Relief from the Automatic Stay was granted for the purpose of allowing the state court action to proceed to trial.[99]  Unfortunately, the state court action stalled, prompting this Court, on March 11, 2008, to set the adversary proceeding for trial.[100]

The Hollanders  argue that during the time period from February 4, 2005, when the stay was lifted, to March 11, 2008, when the matter was set for trial, Baker Donelson attorneys merely monitored the bankruptcy proceeding.  According to the Hollanders, counsels' action during this time period did nothing to further the prosecution of the Sigillitos' claims against the Hollanders. The Hollanders assert that they are not to blame for the fact that the matter remained pending in state court for five (5) years and as such, they should not be responsible for the escalating fees the Sigillitos incurred during this time period.

Based  upon  the  Court's  review  of  the  specific  billing  entries,[101]  it  finds  that  the overwhelming majority of counsels' time did further the prosecution of the Sigillitos' claims against the Hollanders.  Baker Donelson's involvement ensured that its clients would not be prejudiced by the ongoing bankruptcy court's administration of the Hollanders' case as the state court action languished.    They also spent time communicating the status of the bankruptcy proceeding to

---

[97]  Bankruptcy Case 04-14550, P-1.

[98]  Adv. Pro. 04-1193, P-1.

[99]  Bankruptcy Case 04-14550, P-35.

[100]  Adv. Pro. 04-1193, P-37.

[101]  Exh. 5 at 130-32.

Pierson and Sigillito.  State counsel, along with the client, were required to know the status of the

bankruptcy case to ensure, in proceeding with the state action, they were not running afoul of an

order from this Court or might be prejudiced by the case's administration.

Counsel also spent time preparing for and attending status conferences required by this

Court. The conferences were designed to keep this Court abreast of the progression in state court.

Ultimately, the lack of progress in the state court is what prompted the setting of this case for trial.[102]

The Hollanders seek to blame the Sigillitos' counsel for the fact that the state court suit

languished for five (5) years without resolution.  Based on this Court's observations, the Sigillitos

took every chance available to liquidate their claims promptly.  The Sigillitos cannot be penalized

for the fact that the state court did not adjudicate their action against the Hollanders in a timely

manner.[103]

### f.  Objection Regarding Time Expended Prior to Lifting of the Stay

The Hollanders object to all time billed by Levine and other associates or law clerks during

the time period prior to the lifting of the stay, claiming such time was duplicative and unnecessary.

The Court disagrees.

Associates Levine and Finan spent considerable time preparing the fraud claim against the

Hollanders.[104] Finan performed legal research and prepared a memorandum on the issue, and Levine

---

[102]   The only entries that can be characterized as a mere monitoring of the bankruptcy proceeding are those associated with counsel's time spent reviewing actions taken by this Court with respect to other creditors of the Hollanders.  Counsel spent only one (1) hour monitoring such activities.  This hour will be discounted as it was not specific to the resolution of this case.  Exh. 5 at 131 and 132.

[103]   Worth noting, the District Court specifically instructed that the Sigillitos should not be penalized for the delay associated with the District Court's recent finding of fraud on the part of the Hollanders.  *In re Hollander*, 2014 WL 4926325 at *3, n.33.

[104]   Exh. 5 at 133-34.

searched for evidence to support fraud. Given that the fraud claim was a significant claim by the Sigillitos against the Hollanders, the Court finds the time spent was necessary and counsel's actions were not duplicative.

The Hollanders also object to the time spent in preparation for the hearing on the Motion to Lift the Automatic Stay. The entries reflect that McNamara spent considerable time researching and preparing a memorandum in support of the motion.[105] The motion was filed on December 17, 2004,[106] a year after the state court action had been instituted. The state court suit had been set for trial, and the Sigillitos had every reason to believe that the state court would conclude the matter in a timely fashion. Further, it was not unreasonable, given that the issues involved state law, to prefer a state venue. A Motion for Relief from the Automatic Stay was necessary for the state court suit to proceed. It was not the fault of either party that five (5) years later, the state court had not heard the case. As a result, the Court finds the time McNamara spent preparing the Motion to Lift the Automatic Stay to be essential.

The Hollanders object to Levine's time 1) reviewing documents supporting a lifting of the stay, 2) conferring with Arnold, and 3) attending the hearing on the Motion to Lift the Automatic Stay.[107] Levine's time was not duplicative of McNamara's time. Further, given Levine's preparation on the matter, his attendance at the hearing on the Motion to Lift the Automatic Stay was necessary.

---

[105]   Exh. 5 at 136.

[106]   Bankruptcy Case 04-14550, P-28

[107]   Exh. 5 at 134.

### g. Objection Regarding Trial Preparation Time

The Hollanders contend that Arnold's trial preparation time should be reduced, claiming "a duplication of effort."[108]  Though the Hollanders are not specific as to what entries they find duplicative, the Court's review reflects that Arnold had multiple telephone conferences or meetings with Pierson, Levine, and Sigillito.[109]  In preparing for a three-day trial, this is not unusual.  In fact, the Court finds Arnold's pre-trial time entries to be conservative.

### h. Objection Regarding Trial Time

Based upon the number of witnesses he examined, the Hollanders assert that Arnold's trial time should be reduced to four (4) hours per day.  The Court disagrees.  The trial lasted three (3) days, and Arnold's presence was required for the entirety of trial.  The eight (8) hours billed by Arnold for each day of trial are reasonable.

The Hollanders seek to eliminate the time Levine spent attending and participating in the trial.  According to the Hollanders, Levine's time was "duplicative and unnecessary inasmuch as he sat idle in the courtroom and added nothing to the presentation of the witnesses or the prosecution of the case."[110]  The Hollanders are mistaken.  The fact that Levine did not question any witnesses does not mean he "sat idle in the courtroom."  Indeed, Levine conferred with Arnold and Pierson in connection with their witness examinations.  In addition, he handled all exhibits, demonstrative documents, and those used for impeachment (*i.e.* depositions) during the trial.  Given Levine's

---

[108]  Adv. Pro. 04-1193, P-204 at 24.

[109]  Exh. 6 at 137.

[110]  Adv. Pro. 04-1193, P-204 at 25.

considerable involvement in pre-trial activities,[111] the Court finds his attendance at the trial reasonable and not duplicative of Arnold and Pierson's involvement.

### i. Objection Regarding Post-Trial Time

The Hollanders seek to dictate how much time counsel should have spent preparing the Sigillitos' post-trial memorandum. Without providing specifics, the Hollanders assert that Arnold's time should be stricken as duplicative of Janke's time. While the time entries reflect that both attorneys worked on the post-trial memorandum, the bulk of the work was performed at a lower billing rate by Janke.[112] The fact that Arnold, as the supervising partner, likewise spent time, though less, working on the memorandum does not render his work duplicative or unnecessary. Allocating the bulk of the work to an associate rather than a partner is cost effective.

Finally, the Hollanders object to any post-trial fees charged "by any other attorney or paralegal at [sic] from Baker Donelson, which includes time spent by Mr. Levine, Ms. Hayden, Mr. [sic] McNamara,[113] and any of the paralegals or other associates."[114] A review of Baker Donelson's post-trial time entries reflect that neither Hayden nor McNamara performed any post-trial work on behalf of the Sigillitos. In fact, the only person, besides Arnold, Janke, and Pierson, to perform post-trial work was Levine. Having reviewed the pertinent billing entries,[115] the Court finds no basis to deduct Levine's time.

---

[111]   Exh. 6 at 141.

[112]   Exh. 6 at 140-41.

[113]   The only McNamara who worked for the Sigillitos was Jennifer McNamara.

[114]   Adv. Pro. 04-1193, P-204 at 26.

[115]   Exh. 6 at 141.

### j. Objection Regarding Appeal Time

In connection with the multiple appeals associated with this case, the Hollanders do not object to the hours spent by Arnold and Janke as unreasonable, but do object to charges for time by any other attorney.[116]  The only two (2) attorneys who assisted Arnold and Janke in the appeal process were McIntyre and Hayden.  A review of their entries reflects that their time, which was limited, was primarily devoted to reviewing appeal briefs prepared, for the most part, by Janke.[117] As noted above, overview of an associate's work is not uncommon and generally is cost effective. No deduction of time is warranted.

### k. Objection Regarding Fee Application Time

Following the District Court's opinion remanding the matter for an award of attorneys' fees, preparations for submitting counsels' fee application commenced.  In preparing the fee application, Arnold expended a total of 7.30 hours,[118] Hayden .5 hours,[119] Janke 14.10 hours,[120] and paralegals expended 15.00 hours.[121]  Multiplying the time expended by the hourly rates approved by this

---

[116]  Adv. Pro. 04-1193, P-204 at 26.

[117]  Exh. 7 at 143-44; Exh. 8 at 145; Exh. 9 at 148; Exh. 10 at 149; Exh. 12 at 151; Exh. 13 at 152; Exh. 20 at 279.

[118]  Exh. 12 at 151; Exh. 13 at 152; Exh. 20 at 279.

[119]  Exh. 20 at 279.

[120]  Exh. 12, at 151; Exh. 13 at 153; Exh. 20 at 279.  With respect to Janke's hours associated with counsel's fee application, the Hollanders contend that the work performed by Janke "could have been performed by a secretary."  See Adv. Pro. 04-1193, P-204 at 26.  A review of the pertinent entries reflects that a paralegal could have performed the breakdown of fees which Janke performed.  As such, the billing for such work, totaling 13.80 hours, should be at a rate of $90.00 per hour, the paralegal rate approved by this Court.  Accordingly, 13.80 hours have been subtracted from Janke's fee application time.

[121]  Exh. 13 at 153; Exh. 20 at 279.  13.80 hours, the time subtracted from Janke's billing entries, have been added as paralegal time.

Court,[122] the total fee application cost is $6,518.50.

The Hollanders' objection to the time spent preparing the fee application is based, in part, on the fact that they disagree with it.[123]  Specifically, they contend it is based on a flawed calculation and includes time and costs that should have been excluded.  The fact that the Hollanders have objections to the fee requested does not constitute a basis for the elimination of fees expended to prepare the request.  Generally, a prevailing party is entitled to reasonable attorneys' fees in connection with the time spent to prepare a fee application.  *Silver Dream*, 2011 WL 5878142 at *7.[124]

### 3.  Clint Pierson "Pierson"

The Sigillitos also employed the services of Pierson in connection with their bankruptcy adversary proceeding.  Pierson's invoices reflect that he began working on this adversary on May

---

[122]  For the time period at issue, a $325.00 hourly rate was approved for Arnold; a $375.00 hourly rate was approved for Hayden; a $185.00 hourly rate was approved for Janke; and a $90.00 hourly rate was approved for paralegals.

[123]  The Hollanders also object to the fee application because it consists of after-the-fact reconstruction of contemporaneous billing records.  *See* Adv. Pro. 04-1193, P-204 at 26.  This Court, however, has already addressed and rejected this argument.  *See supra* at 20.

[124]  Out of an abundance of caution, this Court will briefly address a recent decision of the United States Supreme Court, *Baker Botts L.L.P. v. Asarco LLC*, __ U.S. __, 135 S.Ct. 2158, __ L.Ed.2d __ (2015).  In *Asarco*, debtor's counsel applied for approval of a fee earned in connection with its representation of the debtor.  The fee request was contested by various interested parties.  The bankruptcy court's opinion was appealed through the United States District Court, the United States Fifth Circuit Court of Appeals, and finally the United States Supreme Court.  In partially reversing the lower courts, the United States Supreme Court held that fees expended in both the preparation of a fee request and in its defense are not properly compensable.

The *Asarco* decision was based on a request under 11 U.S.C. Section 330.  This Court briefly searched for authority under state law addressing the issue.  Because no state law to the contrary could be found, the fees are awarded.  The fees have been quantified because the *Asarco* decision overturns established precedent in this Circuit and others, and the extent of its application is subject to debate.  However, because this Court considers its holding distinguishable, the fees incurred to both prepare and defend the Sigillitos' request for reimbursement of attorneys fees are granted.

1, 2008.[125]  Invoices for time expended through October 24, 2008, were supplied.[126]  The Hollanders

complain about Pierson's billing for pre-trial matters during the period from July 1, 2008, to July

10, 2008, claiming that much of his effort was duplicative of the work performed by co-counsel,

Arnold.  The Court finds, based upon its review of the two (2) attorneys' billing entries,[127] that

several pre-trial conferences occurred, but their efforts cannot properly be characterized as

duplicative.  It is not uncommon for counsel to confer regarding trial strategy and other pre-trial

matters, and the time spent was kept to a minimum.

With regard to Pierson's trial time, the Hollanders complain about the disparity between the

time Arnold charged (eight (8) hours for each day of trial) and the time that Pierson charged (eleven

(11) hours on day one, twelve (12) hours on day two, and thirteen (13) hours on the third day of

trial).  Pierson's trial time should be limited to eight (8) hours per day, the time actually spent in

trial, but he is entitled travel time at one-half his billing rate, the standard rate allowed in this District

for travel time.[128]  His travel time should not exceed two (2) hours per day.  Thus, a total of twelve

(12) hours must be deducted from Pierson's regular ($150.00) billing time, and six (6) hours must

be added at the lower billing rate of $75.00 per hour.

---

[125]  Exh. 15 at 236.

[126]  Exh. 15 at 241.

[127]  Exh. 15 at 239; Exh. 6 at 137.

[128]  Pierson traveled from Covington to New Orleans each day for trial.

Pierson also billed a total of 7.70 hours for work performed over the weekend in preparation for the final two (2) days of trial.[129]  Arnold billed only one (1) hour over the same period.[130]  The fact that Pierson spent more time in pre-trial preparation does not warrant a reduction of his hours. It is not for the Hollanders to decree how Pierson should have prepared for trial.

As for Pierson's post-trial hours, the Hollanders assert that Pierson's hours should be reduced to match the hours billed by co-counsel Janke.[131]  As with pre-trial preparation, the Hollanders cannot prescribe how much time Pierson should have spent on post-trial matters such as drafting a post-trial memorandum.  Based upon its review, the Court finds Pierson's hours reasonable.

### B. State Court Proceeding

As stated earlier, in March 2002, the Sigillitos purchased a home from the Hollanders.  In March 2003, the Sigillitos filed a state court lawsuit against the Hollanders seeking damages, attorneys' fees and either a reduction in the purchase price, payment for the expenses to repair, or rescission of the sale based on redhibitory defects in the home.[132]  In connection with their state redhibitory action, the Sigillitos employed Grace Phyllis Gremillion and Clint Pierson as their counsel.

---

[129]  Exh. 15 at 239.

[130]  Exh. 6 at 137.

[131]  Pierson billed 25.8 post-trial hours.  *See* Exh. 15 at 241.  Janke billed 24.7 post-trial hours.  *See* Exh. 6 at 140-41.

[132]  Adv. Pro. 04-1193, P-145 at 1.

### 1. Grace Phyllis Gremillion ("Gremillion")

From December 2002 through the filing of the Sigillitos' petition for damages in March 2003, Gremillion expended seven (7) hours at $125.00 per hour, for a total fee of $875.00.[133]  The Court finds the hours expended are reasonable as is the hourly rate.[134]

### 2. Clint Pierson ("Pierson")

In addition to representing the Sigillitos in their bankruptcy adversary proceeding, Pierson represented the Sigillitos in connection with their state court action against the Hollanders.  Pierson began work for the Sigillitos in August 2003 at the hourly rate of $150.00.[135]  Pierson was assisted by a second attorney who also billed at $150.00 per hour, a law clerk who billed at $50.00 per hour, and "staff/paralegal" billing at $65.00 per hour.[136]

The Hollanders object to the time expended by Pierson and others in pursuing third parties. Pierson sought to add as defendants Allstate Insurance Company ("Allstate"), Leonard Quick ("Quick"), and Quick & Associates, Inc.[137]  All three defendants were ultimately dismissed from the lawsuit.[138]

---

[133]  Exh. 17.

[134]  The Hollanders do not object to Gremillion's billing rate of $125.00 per hour and do not object to the amount of time she expended.  In May 2004, the Louisiana Second Circuit Court of Appeal, in a redhibition action, found an hourly rate of $150.00 per hour to be reasonable.  *See Linoski*, 873 So.2d 886.

[135]  The Hollanders do not object to Pierson's billing rate.  Pierson charged the same rate, $150.00 per hour, in connection with his representation of the Sigillitos in both their state court proceeding and bankruptcy adversary proceeding.

[136]  The Hollanders do not object to the above billing rates.

[137]  Exh. 33.  Allstate was the Hollanders' home insurer.  Quick was hired by Allstate and allegedly provided advice to the Hollanders regarding disclosures in connection with the future sale of their home.

[138]  Exh. 36 and Exh. 37.

Though unsuccessful, the Court finds that Pierson's effort to add Allstate, Quick, and Quick & Associates, Inc., as defendants, was not frivolous. Quick, as an agent for Allstate, purportedly advised Sheila Hollander as to what disclosures should be made in selling the Hollanders' house. The alleged lack of full disclosure was the basis of the Sigillitos' lawsuit against the Hollanders. Although the Hollanders complain of these efforts, ironically had Pierson been successful, the judgment against them would have been reduced. As a result, deduction of Pierson's time in this regard is not warranted.

In addition to his legal work, Pierson undertook ministerial or administrative work such as traveling to the courthouse to file pleadings.[139] The Hollanders complain that the time should not be charged at legal rates. The Court agrees that these tasks should have been delegated to a paralegal which Pierson billed out at a rate of $65.00 per hour. Based upon its independent review, the Court finds that Pierson expended 6.90 hours performing tasks more appropriately handled by staff.[140] Therefore, Pierson's hourly rate will be adjusted to that of his paralegal for this time.

A portion of Pierson's time was spent seeking a partial summary judgment against the Hollanders. The Hollanders complain that the time spent in connection with this motion should be struck as it was both ill-conceived and unsuccessful. A review of the memorandum in support of the motion reflects on its face the existence of material factual issues. In particular, the memorandum discusses issues regarding actions the Hollanders allegedly took to correct the home

---

[139] *See, e.g.,* Exh. 15 at 201.

[140] Exh. 15 at 173, 180, 190, 195, 196, 201, 206, 214, 215, 225, 226, 228, 231, 232, 234. The Court notes that the Hollanders, in their opposition memorandum (pleading 204), object to other entries purported to represent ministerial tasks performed by Pierson. However, some of the tasks to which they object were not performed by Pierson. *See, e.g.,* Exh. 15 at 171, 11/21/03 entry to which Hollanders object which was performed by a law clerk.

defects and actions the Hollanders allegedly did not take to inform the Sigillitos of the problems.[141]

Given the existence of issues of material fact, the motion was unsurprisingly denied.[142]

From its inception, the Motion for Partial Summary Judgment had little chance of success. In this Court's experience, suits involving construction defects, redhibition, and fraud are not suitable for summary disposition. This case is no exception. There was little to no reason for counsel to believe that a matter so full of contested facts could be disposed of completely or even partially by summary judgment. Although unusual, this is a circumstance that requires a reduction to the fee request due to the results obtained.[143] Based upon its independent review of Pierson's billing records, the Court finds that Pierson billed a total of 31.50 hours pursuing the partial summary judgment.[144] Pierson's hours will be reduced accordingly.

During a relatively small portion of the time Pierson represented the Sigillitos in the state court proceeding, Pierson was associated with the law firm of McCranie, Sistrunk, Anselmo, Hardy, Maxwell & McDaniel, P.C. ("McCranie Sistrunk").[145] While the matter was pending, McCranie Sistrunk sought to intervene, seeking a share of any attorneys' fees awarded in connection with the Sigillitos' claims against the Hollanders. Pierson spent a total of one (1) hour reviewing the

---

[141] Exh. 31. The memorandum incorrectly reflects that the Sigillitos were seeking summary judgment rather than partial summary judgment.

[142] Exh. 32. In its Judgment denying the Sigillitos' motion, the state court properly recognized that the Sigillitos were seeking a partial summary judgment.

[143] See discussion of *Hensley v. Eckerhart* at 18, *supra*.

[144] Exh. 15 at 174, 176, 177, 184, 185, 189, 190, 191, 195.

[145] Pierson's association with McCranie Sistrunk lasted approximately six (6) months, from November 2004 to May 2005. *See* Exh. 35, Petition of Intervention, ¶ III.

intervention petition and preparing a motion for extension of time to respond.[146]  As this time was spent in claims between Pierson and McCranie Sistrunk, it is not properly included in the costs to litigate the Sigillitos' claims against the Hollanders.  Therefore, one (1) hour of compensation must be deducted from the fee request.

### C.  Base Amount:  Reasonable Rates x Reasonable Hours[147]

The Court finds the awardable fees are as follows.

State Court Proceeding:
   Gremillion: 7 Hours x $125.00 = $875.00
   Pierson: 169.75 Hours[148] x $150.00 = $25,462.50
   Pierson Associate: .50 Hour x $150.00 = $75.00
   Pierson Paralegal: 9.40 Hours[149] x $65.00 = $611.00
   Pierson Law Clerk: .50 Hours x $50.00 = $25.00

Bankruptcy/Adversary Proceeding:
   Pierson: 132.10 Hours[150] x $150.00 = $19,815.00
   Pierson: 6 Hours x $75.00 = $450.00
   Arnold (7/1/04-5/23/05) 24.90 Hours x $250.00 = $6,225.00 (redacted time deleted)
   Arnold (6/14/05-1/30/07) 12.50 Hours[151] x $265.00 = $3,312.50 (redacted time deleted)
   Arnold (2/1/07-12/4/07) 6.30 Hours x $275.00 = $1,732.50 (redacted time deleted)

---

[146]  Exh. 15 at 206.

[147]  The Court, in determining counsel's reasonable hours, considered only those hours for which billing entries were provided.  Some of counsel's requested time was not documented (*see* discussion at n.26 *supra*) and a few entries were redacted (*see* discussion at 22 *supra*).  Without adequate documentation detail to these billing entries, the Court had no basis upon which to judge the reasonableness of counsels' fees.  As the Fifth Circuit provided in *Kellstrom, supra,* the fee seeker has the burden of proving the reasonable number of hours expended, and counsel can satisfy that burden only by providing adequate evidence that will enable the court to ascertain what hours should be included in the reimbursement.  As a result, some time has been excluded.

[148]  Deducted from Pierson's hours are the 31.50 hours expended pursuing a partial summary judgment, the 6.90 hours spent performing ministerial tasks, and the one (1) hour spent reviewing the intervention petition and seeking an extension of time to respond to same.

[149]  6.90 hours, the time spent by Pierson performing ministerial tasks, was added to the paralegal time.

[150]  Six (6) hours have been deducted to account for Pierson's excess travel hours.

[151]  One (1) hour has been deducted to account for the hour spent monitoring proceedings regarding other creditors of the Hollanders.

35

Arnold (3/10/08-5/20/08) 15.40 Hours x $280.00 = $4,312.00
Arnold (6/23/08-1/26/09): 112.90 Hours x $280.00 = $31,612.00
Arnold (3/2/09-3/16/09): 2.10 Hours x $295.00 = $619.50
Arnold (4/6/09-8/25/09): 4.80 Hours x $295.00 = $1,416.00
Arnold (1/13/10-1/26/10): 1.1 Hours x $295.00 = $324.50
Arnold (2/17/10-3/25/10): 3.20 Hours x $300.00 = $960.00
Arnold (7/14/10 - 1/30/12): 4.40 Hours x $300.00 = $1,320.00
Arnold (9/27/13 - 11/21/13): .70 Hours x $300.00 = $210.00
Arnold (1/17/14 - 1/30/15): 21.30 Hours x $325.00 = $6,922.50
Hayden (1/20/12-1/28/15): 4 Hours x $375.00 = $1,500.00
McIntyre (3/30/09-6/3/09): 8.2 Hours x $305.00 = $2,501.00
McIntyre (2/20/10): 1.1 Hours x $305.00 = $335.50
McIntyre (9/7/10): 1.8 Hours x $305.00 = $549.00
McIntyre (10/28/14): .6 x $310.00 = $186.00
Silverstein (5/8/06-5/22/06): (all time was redacted)
McNamara (12/8/04-12/16/04):  10.2 Hours x $175.00 = $1,785.00
Levine (7/1/04-3/17/05): 7.60 Hours x $150.00 = $1,140.00
Levine (7/1/05-7/26/06): 4.40 Hours x $165.00 = $726.00
Levine (3/10/08-5/29/08): 16.02 Hours x $190.00 = $3,043.80
Levine (6/3/08-1/14/09): 47.20 Hours x $190.00 = $8,968.00
Ballay (8/6/08-8/7/08): 5.90 Hours x $170.00 = $1,003.00
Finan (7/6/04): 4 Hours x $70.00 = $280.00
Finan (5/23/06-6/2/06): .2 Hours x $115.00 = $23.00 (redacted time deleted)
Colomb (4/22/08): .7 Hours x $125.00 = $87.50
Janke (10/14/08-1/26/09): 23.00 Hours x $125.00 = $2,875.00
Janke (3/10/09): 1.70 Hours x $130.00 = $221.00
Janke (4/3/09-8/25/09): 41.50 Hours x $130.00 = $5,395.00
Janke (1/22/10-1/28/10): 7.60 Hours x $130.00 = $988.00
Janke (2/1/10-5/18/10): 12.80 Hours x $165.00 = $2,112.00
Janke (7/26/10-1/25/12): 63.10 Hours x 165.00 = $10,411.50
Janke (2/16/12-12/30/13): 14.40 Hours x $185.00 = $2,664.00
Janke (1/17/14-1/29/15): 30.40 Hours[152] x $185.00 = $5,624.00
Juneau (9/3/10): .4 Hours x $135.00 = $54.00
Paralegal (12/16/14-12/18/14, 1/28/15): 13.80 Hours[153] x $90.00 = $1,242.00
Courtney (5/20/09-5/27/09): 5 Hours x $90.00 = $450.00
Berthelot: (12/8/04): 1 Hour x $70.00 = $70.00
Alberts: (5/19/09-8/26/10): 27.70 Hours x $90.00 = $2,493.00
Voisin: (11/11/14): .4 Hours x $90.00 = $36.00
Roques: (1/29/15-1/30/15): 1.2 Hours x $90.00 = $108.00

---

[152] The Court subtracted 13.80 hours from Janke's time.  The 13.80 hours represents the time Janke spent compiling billing entries, work which could have been performed by a paralegal.

[153] 13.80 hours, the time spent by Janke compiling billing entries, were added to paralegal time.

Thus, the base amount of attorneys' fees is $163,151.30.  Next, a determination must be made as to whether a departure from this amount is warranted by virtue of an application of the Rule 1.5 factors.  As noted earlier, the Rule 1.5 factors are virtually identical to the *Johnson* factors employed to determine whether an upward or downward departure of the federal lodestar is reasonable.[154]  There is a strong presumption that the lodestar constitutes a reasonable fee.  *Walker*, 99 F.3d at 771.  Indeed, many of the *Johnson* factors are subsumed in the lodestar calculation.  *Id.* at 771-72.  The fee applicant bears the burden of showing that an adjustment to the lodestar is "necessary to the determination of a reasonable fee."  *Id.* at 771 (quotations omitted).

## IV.  Rule 1.5 Factors

### A.  Time and Labor Required

The Court, by virtue of its base analysis, has already determined the time and labor required. Specifically, the Court determined what hours were reasonably expended.  No further adjustment is necessary.

### B.  Novelty and Difficulty of the Issues

The issues presented by this matter were (1) whether the Hollanders sold the Sigillitos a house with redhibitory defects and (2) whether the sale was made under false pretenses, false representations, or actual fraud.  The Sigillitos argue that the novelty and difficulty of the issues, entitle them to an upward fee adjustment.  They point to the fact that multiple judges faced with the issue came to different conclusions.[155]  However, the Sigillitos have already been compensated for the differing opinions of the courts through the substantial attorneys' fees awarded in connection

---

[154]  *See supra* at n.3.

[155]  Adv. Pro. 04-1193, P-199 at 26.

with their multiple appeals.  Therefore, no further enhancement is warranted.

### C.  Skill Requisite to Perform the Legal Services Properly

The skill of the Sigillitos' attorneys is exemplified by their success on appeal.  Nevertheless, the Sigillitos have already been compensated in connection with their counsels' skill, having been awarded the attorneys' fees they incurred on appeal and generally at the high end of hourly rates approved for counsel of like experience.  Therefore, an upward adjustment based upon the skill of counsel is not reasonable.

### D.  Preclusion of Other Employment

The Sigillitos' attorneys make no claim that the instant case precluded other employment. While this case, with its multiple appeals, no doubt absorbed much of counsels' time, they have been appropriately compensated.

### E.  Customary Fee

The customary fee is reflected in the billing entries.  This Court has evaluated the reasonableness of counsels' customary fee in its determination of appropriate hourly rates. Therefore, further adjustment is unnecessary.[156]

### F.  Amount Involved and Results Obtained

This factor has already been addressed.[157] The Sigillitos were successful with respect to their claim of redhibition and, ultimately, with respect to their claim of fraud.  Their success has been accounted for in the significant fees the Sigillitos have been awarded.

---

[156] *See Silver Dream*, 2011 WL 5878142 at *7 ("The customary fee appears to be the fee reflected in the billing statements and has already been evaluated in establishing a reasonable hourly rate.").

[157] *See* discussion *supra* at 18-20.

### G. Time Limitations Imposed by Client or by Circumstances

The Sigillitos' attorneys make no claim that any time limitations were imposed upon them. To the contrary, counsel commends the Sigillitos for their "unfettered patience."[158]  Therefore, no adjustment of fees is warranted.

### H. Nature and Length of Professional Relationship with Client

Although there is no evidence to suggest that counsel had a relationship with the Sigillitos prior to the onset of this case, the representation has been long.  This factor, however, has been accounted for by increasing the applicable rates over the period of representation.  Therefore, no further adjustment is reasonable.

### I. Experience, Reputation, and Ability of Lawyers

This Court has already taken into account the experience, reputation, and ability of the Sigillitos' attorneys *vis a vis* those of like talent and experience.  This consideration went into the allowed hourly rates.  In particular, the experience of each attorney was specifically noted in the Court's evaluation of counsels' billing rates along with those of similar experience and talent. Therefore, no further adjustment is necessary.

### J. Whether the Fee is Fixed or Contingent

No adjustment is warranted by virtue of this factor as counsels' fee was neither fixed nor contingent.  Thus, the Court finds the base amount of $163,151.30 to be reasonable.  Next, a determination of reasonable costs must be considered.

---

[158]  Adv. Pro. 04-1193, P-199 at 25.

## V. COSTS[159]

### A. Expert Expenses[160]

### 1. Larry Blanchette ("Blanchette")

At the trial on the merits, conducted July 11, 14, and 15, 2008, the Sigillitos presented an extensive list of expenses allegedly incurred since the purchase of their home.[161]   The Court approved some of the expenses and rejected others in its Opinion.[162]   Three (3) payments, incurred on May 30, 2003, August 14, 2003, and October 10, 2003, to Blanchette in the total amount of $4,658.55 were approved.[163]   The Sigillitos seek reimbursement for two (2) additional payments to Blanchette.  In support, the Sigillitos have provided a May 22, 2007 invoice from Blanchette in the amount of $1,650.00 for services performed October 1, 2006, to May 20, 2007,[164] and a July 21,

---

[159]   The District Court remanded this matter to the undersigned for the purpose of determining attorneys' fees as provided for under Louisiana Civil Code Article 1958.  Article 1958 provides that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees."  The Hollanders contend that because Article 1958 makes no mention of costs, costs are not included in the remand order.  Costs are generally assessed in connection with an award of attorneys' fees and have been specifically assessed in connection with a finding of fraud.  *See Huval, Veazey, Felder & Renegar, LLC v. Schiller*, 2015 WL 175735, *5 (W.D. La. Jan. 13, 2015) (because defendant's action constituted fraud under La. C.C. art. 1958, plaintiff was entitled to recover costs and reasonable attorneys' fees); *Clark v. Simmons*, 2014 WL 7338491, *1 (La. App. 5th Cir. 2014) (parties whose actions constituted fraud were liable for the payment of attorneys' fees, pursuant to Article 1958, along with costs).

[160]   The expert expenses at issue are associated with fees charged by experts who testified at trial.  The Sigillitos are not seeking to recover fees associated with experts who did not offer trial testimony.  Adv. Pro. 04-1193, P-211 at 4-5, n.3

[161]   The list was admitted into evidence as Exh. 43 in the July, 2008 trial.  In the instant matter, the Court took judicial notice of the expense list presented in this record as Exh. 29.

[162]   The Sigillitos, in their fee application, initially sought reimbursement of expert expenses previously rejected by this Court as well as some approved by the Court.  The Sigillitos have amended their request and are no longer seeking reimbursement for these costs.  Adv. Pro. 04-1193, P-211 at 3-4.

[163]   *In re Hollander*, 2009 WL 111732 at *8.  The three expenses approved by the Court are listed in Exh. 29 at 486.

[164]   Exh. 18 at 258.

40

2008 invoice in the amount of $3,262.50 for expenses associated with Blanchette's testimony at trial.[165]

The Hollanders oppose the reimbursement of the above expenses on the ground that the fees introduced at trial were rejected.[166]  A review of the listing of expenses submitted to this Court[167] reveals that the expenses at issue were not previously presented as they were not, for the most part, expenses associated with the Sigillitos' damage claim.  In contrast, this Opinion deals with the costs or expenses associated with trial.

The Court finds no basis upon which to deny the Sigillitos reimbursement in the amount of $3,262.50 for Blanchette's fee associated with his trial testimony.  However, the Court will deny reimbursement in the amount of $1,650.00 for costs associated with the Sigillitos' damage claim.  Unlike Blanchette's trial fee, this invoice should have been presented in connection with the Sigillitos' overall damages.  *See generally, Fox v. Connecticut Fire Ins. Co.*, 380 F.2d 360, 362 (10th Cir. 1967) (parties are not permitted to collect their damages on a piecemeal basis); *McMillan v. Morgan County*, 2010 WL 1753401, *7 (D. Utah Apr. 29, 2010) (same).

### 2.  Fred Vanderbrook ("Vanderbrook")

The Hollanders admit that Vanderbrook was tendered and accepted as an expert in structural engineering.[168]  They contend, however, that his testimony was factual in nature and as such, he should not be considered an expert for purposes of reimbursing the Sigillitos for the cost of his

---

[165]  Exh. 18 at 261.

[166]  Adv. Pro. 04-1193, P-236 at 3.

[167]  Exh. 29.

[168]  Adv. Pro. 04-1193, P-236 at 2.

testimony.

An expert's testimony invariably consists of a combination of fact and opinion. As the Fifth Circuit explained, it is the expert who "synthesizes and interprets the factual testimony." *Kinney v. Weaver*, 367 F.3d 337, 389 (5th Cir. 2004). That Vanderbrook's opinion testimony was intertwined with the facts of the case does not render his testimony factual in nature. Vanderbrook was qualified as an expert, and the Sigillitos are entitled to reimbursement of $348.25 for the cost of his trial participation.[169]

### B. Legal Expenses

### 1. Gremillion

Gremillion's expenses amount to $403.63.[170] The Hollanders raise no objection to these costs, and this Court's review finds the expenses to be reasonable. The Sigillitos are entitled to reimbursement in the amount of $403.63.

### 2. Pierson

Other than some duplication of costs,[171] which have been excluded, the Court finds Pierson's expenses to be reasonable. The bulk of the expenses were associated with deposition transcription costs, an expense necessary for the purpose of guiding the matter towards adjudication. The Sigillitos, in connection with Pierson's expenses, are entitled to reimbursement in the amount of $5,626.09.[172]

---

[169] Exh. 18 at 260.

[170] Exh. 17 at 245, 246, 248, 249.

[171] Exh. 15 at 171, 175, 220, 230, 237.

[172] Exh. 15 at 160, 161, 163, 164, 169, 171, 172, 182, 183, 188, 191, 193, 194, 196, 198, 200, 202, 204, 208, 210, 215, 217, 220, 222, 224, 230, 237, 240, 241.

### `3. Baker Donelson

Other than the expenses attributable to Blanchette and Vanderbrook, the Hollanders lodge no objections to counsels' expenses. This Court's review reflects that the expenses appear reasonable. Accordingly, the Sigillitos are entitled to reimbursement in the amount of $6,858.45.

## VI. CONCLUSION

Based upon the above, the Court finds the Hollanders are liable to the Sigillitos for attorneys' fees in the amount of $163,151.30 and for costs in the amount of $16,498.92, plus legal interest from the date of the Court's final judgment. The Court will enter a Judgment in accordance with this ruling.